IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HENRY LEONARD PEREA,

        **Plaintiff**,

v.                                                   No. 22-cv-00539 JHR

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

        **Defendant**.

## MEMORANDUM OPINION AND ORDER AFFIRMING THE DECISION OF THE COMMISSIONER DENYING BENEFITS

Before the Court is Plaintiff Henry Perea's Motion to Reverse or Remand. [Doc. 17]. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties consented to Magistrate Jerry H. Ritter resolving Perea's challenge to the Commissioner's final decision on his application for Social Security benefits and entering final judgment in this appeal. [Doc. 6]. Having reviewed the parties' briefing and the Administrative Record, the Court finds that Perea's arguments do not warrant remand and will **DENY** Perea's Motion and **AFFIRM** the Commissioner's final decision denying benefits under the Social Security Act.

### I.    BACKGROUND AND PROCEDURAL HISTORY

On November 14, 2019, Perea protectively filed his application for disability and disability insurance benefits alleging disability beginning on March 15, 2019. AR at 12. Perea's disability claim was denied both initially and upon reconsideration. *Id*. After requesting a hearing, administrative law judge ("ALJ") Jennifer Fellabaum held a telephonic hearing on December 9, 2021, which Perea, his attorney, and an impartial vocational expert ("VE") attended. *Id*. The ALJ issued her decision finding Perea not disabled on February 1, 2022. AR at 12- 22. Perea moved to

reverse the ALJ's decision [Doc. 17], the Commissioner responded [Doc.22], and Perea replied [Doc. 23].

Perea alleges disability based on several ailments: bilateral hand osteoarthritis, neuropathy, trigeminal neuralgia, colon polyps, internal hemorrhoids, left knee osteoarthritis, hyperlipidemia, right lateral epicondylitis, and inguinal hernia. AR at 15. Perea cited trigeminal neuralgia as the reason he is unable to work. AR at 37. He states that the trigeminal neuralgia pain is usually localized on the left side of his face, comes in "random attacks" lasting "a week, a month," and is "very painful" to the point of incapacitation. *Id.* He alleges that this pain makes him "afraid to move" because any touch to his face can trigger an attack, including "a little breeze of wind" or brushing his teeth. AR at 37-38. Perea takes Tegretol and Neurontin medication every day and describes their side effects, including making him feel dizzy and drunk such that he sometimes must pull over while driving (especially carbamazazepine). AR at 39. He is contemplating surgery at this point, but expresses hesitancy because there is no guarantee that it will succeed in curing the trigeminal neuralgia. AR at 45. Perea also alleges that this condition causes him substantial anxiety. AR at 46-47.

Perea also reported that arthritis causes him significant pain and life disruption as well. AR at 40. He claims that in the morning, when the pain is the worst, he has to open and close his hands multiple times. AR at 41. Perea stated that the arthritic pain is the same on both hands and feels like his "whole bones ache." *Id.* He described deformities on both hands. *Id.*

Regarding household chores, Perea reported struggling with activities requiring picking up an object, such as a shovel, because it "sends these excruciating pains right through your fingers. He endorses being able to do "little, light things" like wash dishes, clean, and other activities that don't involve pressure on the joints or hands (such as pushing). *Id.* On a typical day drives his

nine-year old to school, reads, washes dishes, and feeds his dogs. AR at 42, 43. AR at 42. Perea listed his past employment as a corrections officer and chief, a medical office clerk, and a municipal judge. AR at 35-36. He was a corrections officer then chief for twenty-four years. AR at 35. He described being able to take time off when his trigeminal neuralgia flared, but also having to abruptly stop municipal court proceedings when he had an attack. AR at 37-38.

## II. THE COMMISSIONER'S FINAL DECISION

A claimant seeking disability benefits must establish that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Administration must apply a five-step analysis to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4) [1].

At Step One, the ALJ found that Perea had not engaged in substantial gainful activity from his alleged onset date of March 15, 2019, through his last insured date of December 31, 2021. AR at 14. At Step Two, the ALJ found that Perea had severe impairments of bilateral hand osteoarthritis, neuropathy, and trigeminal neuralgia. AR at 15. These conditions significantly limit Perea's ability to perform basic work activities. *Id.* Conversely, the ALJ found Perea's colon polyps, internal hemorrhoids, left knee osteoarthritis, hyperlipidemia, right lateral epicondylitis, and inguinal hernia to be non-severe. AR at 15. The ALJ considered all these medically determinable impairments when she determined Perea's residual functional capacity. *Id.*

The ALJ also considered Perea's medically determinable mental health impairments of depression, anxiety, and post-traumatic stress disorder (PTSD), finding them also non-severe. *Id.*

---

[1] These steps are summarized in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016).

3

The ALJ considered the four broad functional areas, or the "paragraph B" criteria, in finding the mental health conditions non-severe. In the first category of understanding, remembering, or applying information, the ALJ determined that Perea had no limitation. In the second category of interacting with others, the ALJ also concluded that Perea had no limitation. In the third category of concentrating, persisting, or maintaining pace, the ALJ found that Perea had a mild limitation. In reaching this conclusion, the ALJ stated "I am finding mild limitations in this domain because the record shows a history of trigeminal neuralgia and at times, the claimant has been without medical insurance," though noting Perea's neuralgia is stable when medicated. AR at 16. In the final category of adapting or managing oneself, the ALJ decided that Perea had no limitation. AR at 16. In summary, "[b]ecause the claimant's medically determinable impairments caused no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they were non-severe." AR at 16.

At Step Three, the ALJ found that Perea did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR at 16. Because there is no listing for trigeminal neuralgia, the ALJ considered the neuropathy listing and found that Perea's neuralgia did not meet or equal the requirements of the neuropathy listing. AR at 17.

When a claimant does not meet a listed impairment, the ALJ must determine the claimant's residual functional capacity. 20 C.F.R. § 404.1520(e). Residual functional capacity ("RFC") is a multidimensional description of the work-related abilities a claimant retains despite impairments. 20 C.F.R. at § 404.1545(a)(1). It "does not represent the *least* an individual can do despite his or

4

her limitations or restrictions, but the *most*." Social Security Ruling ("SSR") 96-8p at *Definition of RFC*. The ALJ determined that Perea could perform light work with limitations:

> I find that, through the date last insured, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could occasionally crouch and crawl. He could never climb ladders, ropes or scaffolds, or be exposed to unprotected heights or hazardous machinery. He could frequently finger and handle bilaterally. He could not operate a motor vehicle for commercial purposes.

AR at 17. The ALJ used a two-step framework to reach this RFC: (1) whether a medically acceptable clinical or laboratory diagnostic technique existed which could reasonably produce Perea's symptoms; and (2) the degree to which Perea's work-related activities are limited by the intensity, persistence, and limiting effects of his symptoms, including pain. This second element involves measuring Perea's statements concerning his symptoms' intensity, persistence, and limitations against other evidence in the record if such symptoms cannot be substantiated in the record. *Id.*

The ALJ extensively analyzed the evidence to support this finding, beginning with Perea's function report from December 13, 2019. *Id.* In that report, Perea endorsed watching TV, using a computer, reading, and making simple meals. *Id.* He also reported sleeping problems resulting in tiredness, low motivation, and difficulty with several activities including lifting, standing, reaching, walking, sitting, climbing stairs, and seeing. *Id.* Further, he reported struggling with low motivation, memory, concentration, and using his hands. AR at 18. He stated that he can walk half a block and pay attention for five minutes but needs instructions repeated. He fears change and stress, largely because his anxiety stems from not knowing when a neuralgia attack will hit and leave him "incapacitated." *Id.* The ALJ contrasted this report with a pain questionnaire from April 1, 2021, in which Perea denied unusual fatigue or needing naps, but endorsed electric shock-like pain in his feet, left hand pain, and depression when he gets pain episodes. *Id.* Perea described the

5

pain as "random" in that he can go months without episodes, which allegedly incapacitate him when they hit. *Id,* at 17.

The ALJ also considered Perea's hearing testimony. The ALJ documented his "main problem" of trigeminal neuralgia arriving in "random painful attacks":

> The attacks can last a week or a month, and he is total [sic] incapacitated and afraid to move. When he retired in 2010, he tried to work through it. He had to take breaks due to excruciating pain, even when he was in court. His pain is usually on the left side of his face; anything can set it off, even a washrag across his eyebrow. The pain progresses and gets worse; he withdraws, and is afraid to touch his face . . . The pain is explosive and he just has to lie down and not do anything. It feels like an ice pick in his brain. He reported some flares of the pain- it can sometimes go a couple of months, other times more. They are random.

*Id.* She also described Perea's arthritic symptoms including pain in the morning and bumps on his joints. *Id.* She documented his stress and anxiety issues and medication side effects of feeling "drunk," dizzy, and memory and balance challenges. *Id.*

After considering Perea's symptoms, the ALJ found that his although his impairments could reasonably cause the alleged symptoms, "[Perea's] symptoms concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" which she proceeded to explain. *Id.*

Regarding the medical evidence, the ALJ began with a 2015 x-ray showing that Perea's hand osteoarthritis had worsened. *Id.* She then discussed a December 14, 2019, consultative examination with Dr. Herlihy, wherein Perea demonstrated a normal affect and mood, normal strength, decreased touch sensation on his feet, tenderness and significant deformity bilaterally at the PIP and DIP joints, but no joint swelling or erythema. AR at 18-19. She further noted that that Perea could lift, carry, and handle light objects and maintained manipulative abilities. AR at 19. Similarly, she noted that Perea could stand and walk in tandem normally, squat and rise with ease, had normal range of motion, but moderately struggled with heel and to walk. *Id.*

pain as "random" in that he can go months without episodes, which allegedly incapacitate him when they hit. *Id,* at 17.

The ALJ also considered Perea's hearing testimony. The ALJ documented his "main problem" of trigeminal neuralgia arriving in "random painful attacks":

> The attacks can last a week or a month, and he is total [sic] incapacitated and afraid to move. When he retired in 2010, he tried to work through it. He had to take breaks due to excruciating pain, even when he was in court. His pain is usually on the left side of his face; anything can set it off, even a washrag across his eyebrow. The pain progresses and gets worse; he withdraws, and is afraid to touch his face . . . The pain is explosive and he just has to lie down and not do anything. It feels like an ice pick in his brain. He reported some flares of the pain- it can sometimes go a couple of months, other times more. They are random.

*Id.* She also described Perea's arthritic symptoms including pain in the morning and bumps on his joints. *Id.* She documented his stress and anxiety issues and medication side effects of feeling "drunk," dizzy, and memory and balance challenges. *Id.*

After considering Perea's symptoms, the ALJ found that his although his impairments could reasonably cause the alleged symptoms, "[Perea's] symptoms concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" which she proceeded to explain. *Id.*

Regarding the medical evidence, the ALJ began with a 2015 x-ray showing that Perea's hand osteoarthritis had worsened. *Id.* She then discussed a December 14, 2019, consultative examination with Dr. Herlihy, wherein Perea demonstrated a normal affect and mood, normal strength, decreased touch sensation on his feet, tenderness and significant deformity bilaterally at the PIP and DIP joints, but no joint swelling or erythema. AR at 18-19. She further noted that that Perea could lift, carry, and handle light objects and maintained manipulative abilities. AR at 19. Similarly, she noted that Perea could stand and walk in tandem normally, squat and rise with ease, had normal range of motion, but moderately struggled with heel and to walk. *Id.*

The ALJ also considered Perea's March 16, 2020, report that Tegretol and Neurontin provided "good control" of his trigeminal neuralgia with no side effects. *Id.* She documented Perea's report that his flares followed "high stress and illness (B3F/1)," but he presented with no acute distress; affect, gait, and range of motion were normal, but his arm was tender. *Id.* The ALJ next discussed Perea's October 29, 2021, exam during which he complained of forearm and elbow pain on the right. *Id.* she noted that he again reported good trigeminal neuralgia control with Tegretol and Neurontin, stating "[h]e was tolerating the medications with no side effects" and flares occurred with stress and illness. *Id.* Examination revealed normal gait, affect, grip strength, and range of motion, but tenderness in the right arm. *Id.* (citing B5F/2).

The ALJ thereafter considered the prior administrative medical findings but noted that she cannot defer to nor give any special evidentiary weight to those opinions. *Id.* She first considered the opinion of state medical consultant Dr. Bocian, who opined that the "record contains insufficient evidence to assess [Perea's] physical limitations due to [Perea's] failure to cooperate" and failure to attend his consultative examination (B3A). *Id.* She noted that Dr. Bates agreed with this assessment on reconsideration. *Id.*

The ALJ disagreed with these assessments, finding them not persuasive because she determined adequate information existed to assess Perea's physical limits. *Id.* She reiterated the findings of Perea's December 2015 hand x-ray showing mild degenerative narrowing and left knee x-ray showing mild lateral knee compartment narrowing. *Id.* She also discussed the results of Dr. Herlihy's consultative examination revealing difficulty with heel and toe walk, decreased sensation on both feet, and bony PIP and DIP joint deformity. *Id.* Further factored in were 2021 appointments for osteoarthritis, neuralgia, and elbow pain. *Id.* Because of Perea's alleged medication side effects including dizziness, she found that Perea "could never climb ladders, ropes

or scaffolds, or be exposed to unprotected heights or hazardous machinery. He could not operate a motor vehicle for commercial purposes" *Id.* at 19-20.

Regarding mental health, the ALJ rejected two prior psychological opinions finding no medically determinable impairments. AR at 20. Instead, the ALJ noted that an acceptable medical source diagnosed Perea with anxiety, depressions, and PTSD. *Id.* She recognized that Perea complains of trouble with memory, concentration, attention, instructions, stress, and routine change; however, "nothing in the medical evidence shows any treatment for mental health." *Id.* Therefore, the ALJ "only found mild limitations regarding [Perea's] ability to maintain concentration, persistence, and pace due to his episodes or pain due to neuralgia" and not because of his depression, anxiety or PTSD, which the ALJ deemed non-severe. *Id.*

The ALJ found Dr. Herlihy's limitations "partially persuasive" and "internally inconsistent to some degree." *Id.* She arrived at this opinion through the following logic:

> If [Perea] could only grasp and handle occasionally, then he would also have significant limits lifting and carrying. Also, the exam does not support occasional manipulative activities: although [Perea] has deformities and tenderness, the exam also showed normal strength, range of motion, and fine and gross manipulative abilities. I find this more consistent with the ability to frequently finger and handle bilaterally rather than occasionally.

*Id.* (noting further Herlihy does not define "mild limits standing and walking"). Finally, she found the opinion of Gerald Chavez, PhD, not persuasive. AR at 20, 21. Dr. Chavez opined that Perea has anxiety, depression, and PTSD to such a degree that he "is seriously limited to [sic] unable to meet competitive standards in every domain since 2007." AR at 20. The ALJ rejected Dr. Chavez's assessment as unsupported:

> [T]here is no detailed evaluation to accompany or support these extreme limitations. In addition, nothing in the medical evidence supports any significant mental health limitations, and certainly not back to 2007. Dr. Chavez does not explain how he reaches his conclusion; he says that [Perea's] years of working at the jail created and exacerbated his issues, which continue to affect him to this day.

> However, the records on file go back to August 2015, and show no significant mental limitations . . . Dr. Chavez does not say that he has reviewed any medical records that would support his conclusions. In sum, Dr. Chavez does not provide enough information [to] support his conclusion, which is also inconsistent with the rest of the medical evidence.

AR at 21.

For these reasons the ALJ found that the medical evidence supports her RFC formulation. *Id.* Although determining that the medical evidence does not support lightheadedness or dizziness, because Perea testified that his medication makes him dizzy and feel drunk, she did find that he "could never climb ladders, ropes or scaffolds, or be exposed to unprotected heights or hazardous machinery, and could not operate a motor vehicle for commercial purposes. *Id.*

At Step Four, the ALJ found that Perea could perform his past relevant work as a head corrections officer (DOT 372.137-101, SVP 6), medical clerk (DOT 205.362-018, SVP 4), and municipal court judge (DOT 111.107-010, SVP 7 as actually performed) because these occupations do not run afoul of the RFC's prohibited work-related activities. *Id.* The ALJ compared the RFC with the physical and mental demands of these jobs and cited the vocational expert's testimony to support this finding. *Id.* She found the ALJ's testimony consistent with the DOT. *Id.* Therefore, the ALJ found that Perea was not disabled. AR at 22.

### III.   <u>STANDARD OF REVIEW</u>

The Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v.*

9

*Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). The Commissioner's findings are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, requiring more than a scintilla but less than a preponderance. *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007. The substantial evidence threshold "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). A decision is not based on substantial evidence if it is overwhelmed by other record evidence. *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014). The Court's review is not *de novo* and the Court may not reweigh the evidence nor substitute its judgment for the agency's in making its ultimate determination. *Lax*, 489 F.3d at 1084. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (internal citation omitted).

### IV.  ANALYSIS

Perea alleges two points of error in his brief. Perea first argues that the ALJ failed to properly consider Perea's description and symptoms of pain stemming from trigeminal neuralgia. [Doc. 17, p. 1, 2]. He next contends that the ALJ improperly excluded limitations on Perea's ability to maintain concentration, persistence, and pace in the RFC because the ALJ found a mild limitation in that category. *Id.* at 1, 10. The Commissioner responds that Perea "actually challenge[s] the way the ALJ considered and assessed Perea's severe impairment of trigeminal neuralgia" and that he improperly asks the Court reweigh evidence *Id.* at 5. The Commissioner avers that substantial evidence supports the ALJ's treatment of Perea's subjective symptoms and no harmful error exists in the ALJ's paragraph B finding of "mild" mental limitations. *Id.* at 12.

### A. The ALJ did not err in assessing Perea's subjective symptoms of pain caused by trigeminal neuralgia.

The Court finds no error in the ALJ's treatment of trigeminal neuralgia in the RFC[2]. Perea disputes that the ALJ "reasonably connected [Perea's self-described limitations] to the record" in the form of "an accurate and logical bridge." [Doc. 17, p. 4]. Perea recounts his trigeminal neuralgia symptoms and alleges that the ALJ's § 404.1529 analysis is "patently defective" and requires remand. *Id.* at 5-7. Perea asserts that the ALJ did not consider enough of the factors under § 404.1529(c)(3) when evaluating his trigeminal neuralgia pain. *Id.* at 8-9. He criticizes the ALJ's "very selective" analysis, which he says improperly focuses on daily activities instead of factors favoring disability. *Id.* Perea also disputes the ALJ characterizing his neuralgia under "good control" with medication, referring to how providers documented his neuralgia symptoms. *Id.*

The Court is not persuaded. The Court begins with the plain language of § 404.1529(c). That subsection explains how the ALJ evaluates the intensity and persistence of symptoms, including pain, and the extent to which those symptoms limit work capacity. § 404.1529(c):

> *General.* When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work. In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you. We also consider the medical opinions as explained in § 404.1520c.

---

[2] At the beginning of this argument, Perea states that the vocational testimony was "premised upon a defective (i.e. inaccurate) RFC" and thus the vocational testimony cannot serve as substantial evidence. [Doc. 17, p. 3]. Perea may have intended to develop this line of reasoning further and did not; the Court treats this argument as conclusory and therefore waived. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (inadequately briefed arguments not considered).

20 CFR § 404. 1529(c). Factors relevant to determining the extent to which symptoms affect work activities include: daily activities; location, duration, frequency, and intensity of pain or other symptoms; precipitating or aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment other than medication; and measures taken to relieve symptoms (*e.g.* lying on back, periodic standing). § 404.1529(c)(3). The ALJ further considers any conflicts existing between the alleged symptoms and the medical evidence, medical sources, or other evidence. § 404. 1529(c)(4).

The ALJ considered more than Perea's activities of daily living in finding that his alleged neuralgia-related pain symptoms were not entirely consistent with the record.  The ALJ did not have to provide a "formalistic factor-by-factor recitation." [Doc. 22, p. 10] (citing *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (merely requiring the ALJ to identify the evidence she relies on in evaluating credibility)). Nonetheless, throughout her decision she did consider the § 404.1529(c)(3) factors. *See* AR at 18-19 (considering pain location ("His pain is usually on the left side of his face"); pain duration (The attacks can last a week or a month - "They are random"); pain intensity ("The pain is so explosive . . . it feels like an icepick on the brain."); precipitating factors of pain ("anything can set it off;" . . . he would have flares when dealing with high stress and illness); medication type, dosage, and effectiveness (Daily Tegretol and Neurontin with which he "reported having good control of his trigeminal neuralgia"); and measures taken to relieve symptoms ("[H]e just has to lie down and not do anything")).

The ALJ also analyzed the medication side effects Perea complained of and imposed specific RFC limitations based on his testimony that Tegretol and Neurontin cause dizziness and can result in falls. AR at 19, 20 (precluding Perea from climbing ladders, ropes or scaffolds, being exposed to unprotected heights or hazardous machinery, or operating a motor vehicle for

commercial reasons). The ALJ thus considered the § 404.1529(c)(3) factors in evaluating his neuralgia as part of the RFC[3].

Notably, Perea devotes more argument to the § 404.1529(c)(3) analysis than to the § 404.1529(c)(4) directives to measure subjective complaints against other evidence to assess consistency with the whole record. *See* § 404.1529(c)(4). The Commissioner states that Perea's subjective account of his symptoms is the only evidence contradicting medical records showing that medication controlled his neuralgia. [Doc. 22, p. 8] The Commissioner professes that the "contradiction between . . . [Perea's] statement of extreme symptoms and . . . his inconsistent statements during treatment visits is standing alone a sufficient reason to reject [Perea's] subjective symptom testimony" [sic]. *Id.* at 8-9 (citing § 404.1529(c)(4); *Shepherd v. Apfel*, 184 F.3d 1196, 1202 (10th Cir. 1999)). Perea does not persuasively rebut, and Court agrees with this well-supported principle. The ALJ applied the proper regulation to conclude that Perea's symptoms were inconsistent with objective evidence of record, including multiple medical opinions. AR at 18-20. The Court sees no harmful error.

Although Perea couches his argument as challenging the ALJ's § 404.1529 assessment of his subjective neuralgia symptoms, in reality he attacks how the ALJ weighed the evidence. Considering that the ALJ did consider all the relevant factors and assess consistency with the record, as explained above, Perea essentially asks the Court to assign more weight to the factors Perea prefers. *See* [Doc. 22, p. 9] ("Tellingly, Plaintiff attempts to reframe the statements he made

---

[3] Perea also argues that the ALJ failed to consider his "stellar work history" and contends that the ALJ was required to consider his willingness to work when evaluating consistency. [Doc. 17, p. 9] (citing a case about credibility evaluation). The Commissioner responds that Perea failed to explain how his work history could resolve conflict between his symptom testimony and record evidence. [Doc. 22, p. 11]. The Commissioner also notes that Perea provide no controlling authority supporting this argument. In addition to concurring with the analytical and authoritative deficiencies the Commissioner identifies, the Court notes that the ALJ discusses Perea's work history. AR at 18 (Considering Perea's testimony that "he has worked through [neuralgia] in the past because employers let him take time off" and that "[w]hen he retired in 2010, he tried to work through it . . . [and] had to take breaks due to excruciating pain, even when he was in court"). The Court is not convinced by this conclusory argument.

to his providers in a different light"). Weighing the evidence is the province of the ALJ; the Court's job is strictly to ensure that substantial evidence supports the ALJ's decision, and no harmful error exists in it. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Even if the Court thinks the ALJ should have reached a different result, it does not change the Court's review. *See id.* Focusing on the proper appellate issue before it, the Court does not discern legal error nor a lack of substantial evidence in the § 404.1529 analysis.

Perea believes that the ALJ's subjective pain findings are speculative because she failed to "closely and affirmatively link" her findings to substantial evidence. [Doc. 17, p. 9] (citing *Zachary v. Saul*, 2019 U.S. Dist. LEXIS 102386, at *27-28 (D. Kan. 2019)). The Commissioner counters that the ALJ articulated her symptom evaluation such that "a subsequent reviewer can assess how she evaluated [Perea's] symptoms." [Doc. 22, p. 12] (citing SSR 16-3p; *Scott v. Berryhill*, 695 F. App'x 399, 404-05 (10th Cir. 2017)). The Court finds that the ALJ satisfied both standards. The ALJ meticulously considered trigeminal neuralgia[4] under the § 404.1529(c)(3) factors, although not articulated in the formalistic way Perea would prefer. *See Poppa*, 569 F.3d at 1171l; AR at 18-19. She explained the inconsistencies she identified between Perea's symptoms, AR at 18-19, and the record, including prior medical opinions, AR at 19-21. *See* § 404.1529(c)(4). The Court finds that the ALJ created a logical bridge between findings on pain and neuralgia symptoms and substantial evidence, allowing meaningful review.

---

[4] Also unpersuasive is Perea's insistence that medication providing "good control" of neuralgia and flare ups with stress or illness are mutually exclusive. *See* [Docs. 17, 23]. Perea does not cite supporting on-point authority but instead charges the ALJ with picking and choosing evidence in her analysis. *See* [Doc. 23, p. 3] (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012)). This would be more persuasive if the ALJ failed to mention Perea's flares triggered by stress or illness, but the fact is she did discuss them, and thus did not "pick and choose." AR at 18, 19. Perea draws a false zero-sum choice between no symptoms at all and completely unmanaged symptoms.

B.  **The ALJ did not err in her analysis of the non-severe, mild mental limitation in concentration, persistence, and maintaining pace.**

Perea's second point of alleged error rests on a similar premise. Perea challenges the lack of an RFC limitation corresponding to the ALJ's step two mild mental limitation finding. [Doc. 17, p. 10]. He argues that the mild limitation in maintaining concentration, persistence, and pace means his "ability to function independently, appropriately, effectively, and on a sustained basis is *slightly limited*" and so "a finding of 'mild' limitation is different from 'no limitation.'" *Id.* (citing 20 C.F.R. Part 404, Subpt. P, App'x 1, § 12.00F(2)(a b)). Thus, Perea asserts, the ALJ erred in failing to include an explicit RFC restriction for this slight mental disparity. *Id.* at 10, 11.

The Commissioner responds that "if an ALJ finds that a claimant's paragraph B categories contain limitations of 'mild' or 'none,' the ALJ will generally find that an impairment is non-severe," meaning that the impairment causes no work limitation. [Doc. 22, p. 12]. The Commissioner also reminds that the ALJ found mild limitations in concentration, persistence, and pace because Perea had been periodically uninsured and therefore unable to secure his medication. *Id.* In turn, his trigeminal neuralgia is well-controlled, and his concentration is unaffected when he is insured and taking medication. *See id*. The Commissioner finally notes that the ALJ found Perea's symptoms inconsistent with other record evidence and therefore urges that the ALJ was not obliged to include a mild mental limitation in the RFC. *Id.*

Neither party accurately characterizes the law concerning non-severe impairments and the extent to which the ALJ must account for them in the RFC analysis. The Tenth Circuit has considered this issue and noted its own divergent results. *Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013). In *Wells*, the Tenth Circuit provided a framework for the analysis requiring more than a non-severe step two finding. *Id.* First, the ALJ must consider the combined effect of all severe *and* non-severe medically determinable impairments. *Id.* at 1065. Second, the ALJ may not

15

substitute his non-severity finding for a proper RFC analysis. *Id.* Finally, the ALJ's RFC analysis must discuss how to evidence supports each conclusion with citations to specific medical and nonmedical facts. *Id.* (internal citations omitted).

Unpublished cases have illustrated the limits of this procedure. In *Alvey*, despite the ALJ failing to discuss non-severe impairments in the RFC analysis, the Tenth Circuit applied the harmless error doctrine because the evidence did not support any functional mental limitations and remand would be futile. *Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013) (noting that no records indicated treatment from a mental health provider). In *Bales*, the court took the ALJ at her word that she considered all symptoms and their consistency with the record in lieu of requiring discussion of each non severe impairment. *Bales v. Colvin*, 576 F. App'x 792, 799 (10th Cir. 2014) (noting that the claimant also failed to explain how any of the non-severe conditions affected her functioning in furtherance of her disability claim).

Here, the ALJ complied with both formulations for evaluating non severe impairments. First, the ALJ stated that she "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." AR at 15. Second, the ALJ did not substitute her non-severe mental finding for a proper RFC analysis. The ALJ considered the mental limitation in her RFC discussion:

> The function reports show complaints of difficulties with memory, concentration, attention . . . However, nothing on [sic] the medical evidence shows any treatment for mental health. I have only found mild limitations regarding the claimant's ability to maintain concentration, persistence, and pace due to episodes of pain due to neuralgia, which is present in the medical records. This is not due to any diagnosis of depression, anxiety, or PTSD.

AR at 20. Third, the ALJ also included a narrative discussion connecting the evidence to each conclusion. She tied her non-severe mental conclusion to the evidence by explaining why she rejected Chavez's opinion that Perea has serious mental limitations:

> [N]othing in the medical evidence supports any significant mental health limitations . . . the records on file go back to August 2015, and show no significant mental limitations; there is no history of psychiatric hospitalizations, and no history of confrontations, panic, phobias, or neurologic conditions that would limit the claimant's cognitive or intellectual abilities.

AR at 21. Consistent with *Alvey*, the ALJ noted the lack of mental health provider records and treatment, and consistent with *Bales*, Perea only provided conclusory statements of how his mild mental impairments affect his daily functioning, insufficient to warrant deeper discussion.

The Court thus finds that the ALJ properly assessed Perea's mild, non-severe impairment regarding concentrating, persisting, and maintaining pace. In addition to taking the ALJ at her word that she considered all the evidence, the Court observes that she incorporated the *Wells* analysis. *Wells*, 727 F.3d at 1065. This conclusion is merited particularly considering the "benefit of the doubt" given when the ALJ found a mild impairment. [Doc. 22, p. 9]. The ALJ explained "the record shows a history of trigeminal neuralgia and at times, the claimant has been without medical insurance," although his neuralgia is controlled when he is insured and medicated. AR at 16. The ALJ considered all the evidence in assessing Perea's mild mental limitation as non-severe and further narrated her thought process in the RFC. The Court finds no error.

## V.     CONCLUSION AND ORDER

For the reasons state above and after reviewing the record, the Court finds that the ALJ's decision is supported by substantial evidence and applied the proper legal standards. The ALJ did not err in her evaluation of Perea's subjective symptoms nor her formulation of RFC limitations. She considered all the evidence in her decision to deny disability at step four. The Court may not

"displace the agency's choice between two fairly conflicting views, even [if] the court would justifiably have made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084. The Court will affirm the ALJ's decision.

**IT IS THEREFORE ORDERED** that Plaintiff Henry Perea's Motion to Reverse and Remand, [Doc. 17], is **DENIED** and the Commissioner's Final Decision in this case is **AFFIRMED.**

_____
**JERRY H. RITTER**
**U.S. MAGISTRATE JUDGE**
**PRESIDING BY CONSENT**